**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **GENERAL CIGAR CO., INC.,** ) | |
| ) | Case No. 1:22-cv-00773-PTG-IDD |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| **FUENTE CIGAR LTD.** ) | |
| **FUENTE MARKETING LTD.,** ) | |
| ) | |
| Defendants/Counter-Plaintiffs. ) | |

**FUENTE MARKETING LTD.'S
ANSWER TO GENERAL CIGAR CO., INC.'S COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant/Counter-Plaintiff Fuente Marketing Ltd. ("Fuente") submits this Answer, Affirmative Defenses, and Counterclaims to Plaintiff/Counter-Defendant General Cigar Co., Inc.'s ("GCC" or "Plaintiff") Complaint.

Except as expressly set forth below, Fuente denies each and every allegation contained in the Complaint, including without limitation, headings, tables, and diagrams contained in the Complaint. Fuente specifically denies that GCC is entitled to any relief requested in the Compliant. Fuente expressly reserves the right to amend and/or supplement its answer, defenses, and/or counterclaims.

**NATURE OF THE ACTION**[1]

1.     Fuente admits that the Complaint purports to be an action for the claims recited in Paragraph 1 but denies the validity of those claims.

---

[1] Fuente incorporates the headings from the Complaint for convenience only. The headings are not intended as statements or admissions by Fuente, and to the extent any heading contains a factual allegation to which a response is required, Fuente denies that allegation.

**VENUE AND JURISDICTION**

2.     GCC's allegations in Paragraph 2 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente admits that GCC purports to bring an action under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and that such a claim, if proper, would arise within the Court's subject matter jurisdiction.

3.     GCC's allegations in Paragraph 3 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente admits that products bearing Fuente's marks are sold throughout the United States, including this judicial district.  Fuente denies the remaining allegations of Paragraph 3.

4.     GCC's allegations in Paragraph 4 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente denies those allegations.

5.     GCC's allegations in Paragraph 5 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente admits that the parties have adverse legal interests and that GCC is seeking declaratory relief.  Fuente denies the remaining allegations of Paragraph 5.

**PLAINTIFF**

6.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 6 and therefore denies those allegations.

7.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 7 and therefore denies those allegations.

8.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 8 and therefore denies those allegations.

9.     Fuente admits that GCC has used some "letter-x-number" composite marks, including CX2, MX2, MX3 and LX2, and these composite marks are used together with a CAO

mark that is substantially larger than the "letter-x-number" composite mark.  Fuente lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 9 and therefore denies those allegations.

10.    Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 10 and therefore denies those allegations.

11.    Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 11 and therefore denies those allegations.

12.    Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 12 and therefore denies those allegations.

13.    Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 13 and therefore denies those allegations.

14.    Fuente admits that GCC announced that it would launch the CAO BX3 cigars in July of 2022.  Fuente lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 14 and therefore denies those allegations.

15.    Fuente admits that the images included in Paragraph 15 show a trade dress used with GCC's CAO BX3 line of cigars and refers to the images for their contents.

16.    Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 16 and therefore denies those allegations, except refers to the images of the trade dress for the CAO BX3 brand in Paragraph 15 for their contents.

17.    Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 17 and therefore denies those allegations.

18.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 18 and therefore denies those allegations, except refers to the images of the trade dress for the CAO BX3 brand in Paragraph 15 for their contents.

19.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 19 and therefore denies those allegations.

20.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 20 and therefore denies those allegations.

21.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 21 and therefore denies those allegations.

22.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 22 and therefore denies those allegations.

23.     Fuente lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 23 and therefore denies those allegations.

## DEFENDANTS

24.     Fuente admits the allegations in Paragraph 24.

25.     Fuente admits that Fuente Cigar Ltd. is a Turks and Caicos company but denies the remaining allegations in Paragraph 25.

26.     Fuente admits that Fuente manufactures, and/or has manufactured on its behalf, and sells handmade premium cigars but denies the remaining allegations in Paragraph 26.

27.     Fuente admits the allegations in Paragraph 27.

28.     Fuente admits that its FUENTE FUENTE OPUSX line of cigars features a cigar band bearing Fuente's famous X design and that some of those cigar bands include, among other colors, red and blue.  Fuente denies the remaining allegations in Paragraph 28.

29.     Fuente admits that Paragraph 29 includes two of many examples of Fuente's logos and that those logos are depicted at https://arturofuente.com/our-cigars/opusx/.  Fuente denies the remaining allegations in Paragraph 29.

30.     Fuente admits that the logos referenced in Paragraph 30 and depicted in Paragraph 29 appear on some of Fuente's cigar bands.  Fuente admits that the example depicted in Paragraph 30 is an example of one of the logos from Paragraph 29 depicted on a Fuente cigar band.  Fuente denies the remaining allegations in Paragraph 30.

31.     Fuente denies the allegations in Paragraph 31.

32.     Fuente admits the allegations in Paragraph 32.

33.     Fuente admits the allegations in Paragraph 33.

34.     Fuente admits that Fuente and GCC receive press coverage from some of the same industry specific blogs and publications, including Cigar Aficionado and Halfwheel.

35.     Fuente admits that it was aware that GCC has used some "letter-x-number" composite marks, such as CX2, MX2, MX3, and LX2.  Fuente states, however, that GCC has used these composite marks in combination with a CAO mark that is larger than the "letter-x-number" composite marks.  Fuente further admits that the first time it became aware of GCC's use of a prominent, stand-alone "X" mark was in association with GCC's BX3.  Fuente denies the remaining allegations in Paragraph 35.

## THE CEASE AND DESIST LETTER

36.     Fuente admits that it sent GCC the letter attached to the Complaint as Exhibit A and refers to the letter for its contents.  Fuente lacks knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 36 and therefore denies those allegations.

37.     Fuente denies the allegations in Paragraph 37, except refers to the letter for its contents.

38.     Fuente denies the allegations in Paragraph 38, except refers to the letter for its contents.

39.     Fuente denies the allegations in Paragraph 39, except refers to the letter for its contents.

40.     Fuente denies the allegations in Paragraph 40, except refers to the letter for its contents.

41.     Fuente denies the allegations in Paragraph 41, except refers to the letter for its contents.

42.     Fuente denies the allegations in Paragraph 42, except refers to the letter for its contents.

43.     Fuente denies the allegations in Paragraph 43, except refers to the letter for its contents.

44.     Fuente denies the allegations in Paragraph 44, except refers to the letter for its contents.

45.     Fuente denies the allegations in Paragraph 45, except refers to the letter for its contents.

46.     Fuente denies the allegations in Paragraph 46, except refers to the letter for its contents.

47.     Fuente denies the allegations in Paragraph 47.

48.     GCC's allegations in Paragraph 48 comprise legal conclusions to which no response is required.   To the extent a response is required, Fuente admits the allegations in Paragraph 48.

49.     Fuente admits that the chart in Paragraph 49 includes some of Fuente's registrations referred to in the letter.  Fuente denies the remaining allegations in Paragraph 49, including that each specimen included in the chart reflects the most recent specimen provided to the USPTO and that each description of goods in the chart reflects the description of goods in the USPTO records. Fuente refers to the USPTO records of the cited registrations for their contents.

50.     Fuente denies the allegations in Paragraph 50, except refers to the cited email for its contents.

51.     Fuente denies the allegations in Paragraph 51, except refers to the cited email for its contents.

52.     Fuente lacks knowledge or information sufficient to admit or deny the allegation that the letter and cited email "place GCC in fear of litigation and force GCC to seek declaratory relief" and thus denies this allegation.  Fuente denies the remaining allegations in Paragraph 52, except refers to the letter and cited email for their contents.

## NO INFRINGEMENT

53.     GCC's allegations in Paragraph 53 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente denies those allegations.

54.     GCC's allegations in Paragraph 54 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 54 and therefore denies those allegations.

55.     GCC's allegations in Paragraph 55 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente denies those allegations.

56.     GCC's allegations of Paragraph 56 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente denies those allegations.

57.     Fuente admits the Complaint purports to request the relief recited in Paragraph 57.

**COUNT 1**
**(Declaration of Non-Infringement—**
**15 U.S.C. § 1051, *et seq*., and 28 U.S.C. § 2201)**

58.     Fuente repeats and realleges its responses to Paragraphs 1-57 with the same force and effect as if fully set forth herein.

59.     GCC's allegations in Paragraph 59 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente admits that GCC purports to bring a cause of action under the Declaratory Judgement Statutes, 28 U.S.C. §§ 2201, 2022, and the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.  Fuente denies that GCC is entitled to any relief.

60.     GCC's allegations in Paragraph 60 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente admits that the parties have adverse legal interests and that GCC is seeking declaratory relief.  Fuente denies the remaining allegations of Paragraph 60, including that GCC is entitled to any relief.

61.     GCC's allegations in Paragraph 61 comprise legal conclusions to which no response is required.  To the extent a response is required, Fuente lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 61 and thus denies those allegations.

62.     Fuente admits that GCC seeks declaratory relief but denies that GCC is entitled to such relief.

**FUENTE'S RESPONSE TO GCC'S PRAYER FOR RELIEF**

Fuente denies that GCC is entitled to any of the relief sought in its prayer, or an award of any relief at all.  GCC's prayer should thus be denied in its entirety with prejudice.

**AFFIRMATIVE DEFENSES**

63.     GCC fails to state a claim upon which relief may be granted.

64.     Fuente reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, under the Lanham Act, and in law or in equity that may now exist or in the future be available based on discovery and further factual investigation of this case.

## COUNTERCLAIMS

Defendant/Counter-Plaintiff Fuente Marketing Ltd. ("Fuente"), by and through its counsel, allege upon actual knowledge with respect to themselves and upon information and belief as to all other matters:

## NATURE OF THE COUNTERCLAIMS

1.      Fuente brings counterclaims against Plaintiff/Counter-Defendant General Cigar Co., Inc. ("GCC") for trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq*.; for trademark infringement under Virginia Code § 59.1-92.12; and for trademark infringement and unfair competition under Virginia common law. Fuente seeks equitable and monetary relief for GCC's willful violations of Fuente's trademark rights in its famous X marks.

2.      GCC has been offering for sale, selling, and promoting cigars, namely the CAO BX3 cigars, in connection with an "X" mark that is in violation of Fuente's trademark rights.  As a result of GCC's use of the "X" mark in connection with cigars, namely the CAO BX3 cigars, consumers are likely to confuse such products and/or GCC with Fuente's products and/or Fuente.

## PARTIES

3.      Fuente Marketing Ltd. is a corporation organized and existing under the laws of the Turks and Caicos Islands with its principal place of business in Providenciales, Turks and Caicos Islands.

4.      GCC, as claimed in its Complaint against Fuente, is a Delaware corporation with an address at Suite 200 2100 East Cary Street, Richmond, Virginia 23223.

## JURISDICTION AND VENUE

5.     This claim arises under the federal Trademark Act, 15 U.S.C. §§ 1051, *et seq*.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).

6.     By GCC's Complaint against Fuente in this Court for declaratory judgment of non-infringement, GCC has submitted itself to the jurisdiction and venue of this Court.

7.     This Court has personal jurisdiction over GCC, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because GCC maintains its principal place of business in this District; Fuente is being harmed in this District; and because GCC is offering, and has sold, infringing goods into this District.

## FUENTE'S HISTORY AND X TRADEMARKS

8.     The Fuente companies are one of the largest family-owned and family-run premium hand-rolled cigar group of companies in the world.  The Fuente family originated in Cuba, like many other cigar families, but then settled in Tampa, Florida.  The Fuente family began selling cigars in the United States in 1912.  Four generations of the Fuente family have labored to produce the finest cigars and to make the company internationally renowned for their cigars.

9.     The FUENTE cigar brand originated in 1912 when Arturo Fuente Sr. founded A. Fuente & Company in Tampa, Florida.  After the company factory burned down in 1924, the Fuente family made handmade cigars in their Tampa, Florida home.  In the late 1950s, the Fuente's began to expand the FUENTE brand beyond Tampa by establishing distributors in Miami and Manhattan.  Up to this point, all FUENTE cigars were made with Cuban tobacco.  However, this changed shortly after 1962 due to the trade embargo placed on the island of Cuba by the United States. The Fuente family successfully experimented with growing tobacco in countries other than

Cuba, and in 1992, the Fuente's created the first successful 100% Dominican puro cigar—the FUENTE FUENTE OPUSX.

10.     The Fuente family worked for years to develop the FUENTE FUENTE OPUSX product.  During the lengthy development of the cigar in the late 1980s and early 1990s, the Fuente's top priority, high-profile development effort was well known throughout the cigar industry as "Project X."  The cigar industry and its consumers alike understood the importance of this special cigar and there was much publicity regarding Project X.  Since the "X" was part of the momentous development effort, the Fuente's wanted it to be in the name of the product, which became FUENTE FUENTE OPUSX.

11.     The Project X tobacco for the first crop of FUENTE FUENTE OPUSX cigars was harvested in 1992.  Once enough premium Dominican tobacco had been grown, harvested, cured, and aged, the Fuente family hand-picked 30 of Fuente's 900-plus cigar rollers to ensure that FUENTE FUENTE OPUSX cigars would be handmade by Fuente's most skilled and highly trained artisans.

12.     Fuente wanted the packaging of the FUENTE FUENTE OPUSX cigars to reflect the extraordinary quality of the cigars.  Fuente worked with a designer for almost two years to create the design for the FUENTE FUENTE OPUSX cigar band, box, and other packaging.  The design was solely based upon Fuente's vision and without reference to any pre-existing materials. Fuente retained a renowned printer to ensure that the production process for the packaging was flawless.  The packaging of the FUENTE FUENTE OPUSX cigars, including the cigar band, the shape and design of the cigar box, the box logos, and the box inserts were created and designed to be different and distinct from any other that existed in the market.

13.     The design and packaging of the FUENTE FUENTE OPUSX includes a label with the Indian goddess of tobacco watching over the iconic Fuente family farm Chateau de la Fuente, an image of the Fuente's proudly inspecting the first crop of Dominican wrapper leaf, and a cigar band bearing Fuente's famous X design trademark.  True and correct photographs of cigars bearing this X design trademark and other X marks are collectively attached as **Exhibit A**.

14.     Since the mid-1900s, Fuente has continuously produced and sold high-quality cigars under the trade name and trademark FUENTE and has used the trademark FUENTE, as well as other associated FUENTE brands to identify its high-quality cigars.  Fuente's products have enjoyed unprecedented popularity.  Fuente's brands are some of the best-selling and most sought cigars in the American market.

15.     Fuente is the owner of many federally registered and common law trademarks for numerous marks for cigars and cigar related products.  Among others, Fuente is the owner of numerous trademarks for or incorporating the letter X in association with cigars.  Fuente is the owner of the following valid and subsisting U.S. federal trademark registrations for its marks that each prominently feature the letter X (collectively, the "X Marks"), including for cigars and cigar related products in International Class 34 (true and correct printouts from the USPTO database are attached as **Exhibit B**):

| Mark | Reg. No. | Reg. Date | Goods |
|------|----------|-----------|-------|
| X | 3254146 | 06/19/2007 | Cigars |
| X | 3285314 | 08/28/2007 | Ashtrays, not of precious metal; Cigar cutters; Lighters not of precious metal |

| | 2536633 | 02/05/2002 | Smoker's articles; ashtrays not made of precious metal; cigar protectors; humidors; lighters not made of precious metal |
|---|---|---|---|
| | 2347248 | 05/02/2000 | Cigars |
| XXX | 3065482 | 03/07/2006 | Cigars |
| X TO THE THIRD POWER | 2397955 | 10/24/2000 | Cigars |
| SERIEX | 3191113 | 01/02/2007 | Cigars |
| RISING X | 3171080 | 11/14/2006 | Cigars |
| FUENTE FUENTE OPUS "X" | 1989060 | 07/23/1996 | Cigars |
| FUENTE OPUSX | 2495579 | 10/09/2001 | Cigar and cigarette lighters of non-precious metal |
| | 2256200 | 06/29/1999 | Cigars |
| | 2364801 | 07/04/2000 | Cigar protectors, humidors |
| FORBIDDENX | 2618671 | 09/10/2022 | Cigars |
| FORBIDDEN X | 3229975 | 04/17/2007 | Cigars |
| | 3258403 | 07/03/2007 | Cigars |

| FUENTE FUENTE FORBIDDEN X | 3229664 | 04/17/2007 | Cigars |
|---|---|---|---|
| PERFECXION X | 3259989 | 07/10/2007 | Cigars |
| SINFUL X | 4332242 | 05/07/2013 | Cigars |
|  | 3508513 | 09/30/2008 | Cigars |
|  | 3508514 | 09/30/2008 | Cigars |
| PERFECXION | 3508515 | 09/30/2008 | Cigars |
|  | 3546215 | 12/16/2008 | Cigars |
|  | 3546216 | 12/16/2008 | Cigars |
| FUENTE FUENTE OPUSX | 3619393 | 05/12/2009 | Ashtrays; Cigar cutters; Cigar lighters |
| FFOX | 3968348 | 05/31/2011 | Cigars |
| FUENTE FUENTE OPUSX MAGNUM O | 4584966 | 08/12/2014 | Cigars |
| FUENTE FUENTE OPUSX 5 STAR | 4782216 | 07/28/2015 | Cigars |
| FORBIDDEN X | 4827597 | 10/6/2015 | Humidors |

| OXO | 5187360 | 04/18/2017 | Cigars |
|---|---|---|---|
|  | 5290190 | 09/19/2017 | Cigars |
|  | 5419339 | 03/06/2018 | Cigars |
| FUENTE OPUSX | 6790463 | 07/12/2022 | Ashtrays for smokers; humidors; cigar cutters |
| X | 6790471 | 07/12/2022 | Humidors |

16.     Fuente's X Marks used in association with its cigars and smoker's articles are some of the most widely known and famous trademarks in the cigar industry.

**FUENTE'S SALES AND PROMOTION AND THE FAME OF ITS X MARK CIGARS**

17.     The result of years of Fuente's efforts and multi-million-dollar investment is a cigar brand that is extraordinarily sought after among cigar aficionados.  FUENTE FUENTE OPUSX cigars are among the most important, recognizable, and high-profile products in the cigar industry. All FUENTE FUENTE OPUSX cigars are sold in association with Fuente's X Marks.  The FUENTE FUENTE OPUSX mark and each of the associated X Marks that are used in association with the FUENTE FUENTE OPUSX cigars, smoker's articles, and other luxury goods, are some of the most widely known and famous trademarks in the cigar industry.

18.     Although hundreds of thousands of FUENTE FUENTE OPUSX cigars are produced each year, due to the popularity of the cigar and brand, demand for FUENTE FUENTE OPUSX cigars far exceeds supply.  As a result, it not uncommon for FUENTE FUENTE OPUSX cigars to sell for more than the suggested retail price.  Many millions of dollars' worth of FUENTE FUENTE OPUSX cigars have been sold in the United States since 1995 when the first FUENTE

FUENTE OPUSX cigar was introduced to the market.  Between 2014 and 2021, Fuente sold almost ███████████ of FUENTE FUENTE OPUSX cigars.

19.     Cigar aficionados and consumers have consistently recognized Fuente, including the FUENTE FUENTE OPUSX, as a top cigar brand in the United States.  For example, *Cigar Aficionado* weekly consumer polls identified Fuente and its FUENTE FUENTE OPUSX cigars among the top cigar brands in the United States.  True and correct copies of cigaraficionado.com webpages showing consumer poll results are collectively attached as **Exhibit C**.

20.     The FUENTE FUENTE OPUSX brand and family of cigars have also received broad acclaim from prominent publications and online cigar retailers.  For example, the FUENTE FUENTE OPUSX cigar was described by *Forbes Magazine* as "a 100% Dominican cigar that Castro himself would envy." *Cigar Aficionado* explained that the brand "gained instant cult status among cigar smokers" and "is among the most sought-after brands in cigar history." BestCigarPrices.com recognizes that "Arturo Fuente Opus X cigars are some of the rarest, most sought after cigars in the world, a fact that is validated by Cigar Aficionado." CigarsDirect.com refers to FUENTE FUENTE OPUSX cigars as "world-renowned." True and correct copies of the webpages or articles quoted in this paragraph are collectively attached as **Exhibit D**.

21.     FUENTE FUENTE OPUX cigars have consistently ranked in the 90's (on a scale of up to 100) by prominent cigar publications such as *Cigar Aficionado*, *Cigar Insider*, *Cigar Snob*, and *Cigars & Spirits*, and have received the highest rating of any Dominican cigar ever made. True and correct copies of exemplary webpages or relevant portions of printed publications showing FUENTE FUENTE OPUSX ratings are collectively attached as **Exhibit E**.

22.     Fuente has also received many awards for its FUENTE FUENTE OPUSX cigars and brand.  For example, Fuente was awarded *Cigar Aficionado*'s 2005 Cigar of the Year for its

FUENTE FUENTE OPUSX Double Corona cigar, *Cigar Aficionado*'s second ranked cigar of 2020 for its FUENTE FUENTE OPUSX Double Robusto cigar, *National Geographic*'s third ranked cigar for its FUENTE FUENTE OPUSX series cigars, *Cigar & Spirits*'s second ranked cigar of 2019 for its Opus X Angel's Share cigar, and *Cigar Insider*'s 2019 and 2020 best-selling cigar brand and third most requested cigar by United States consumers as voted by cigar shop owners.  True and correct copies of webpages or relevant portions of printed publications showing awards Fuente has received for its FUENTE FUENTE OPUSX cigars and brand are collectively attached as **Exhibit F**.

23.    The X Marks are widely recognized as indicating premium hand-rolled cigars manufactured and sold by Fuente.  FUENTE FUENTE OPUSX cigars have been marketed and sold in interstate commerce in the United States continuously since 1995.  Fuente's cigars bearing the X Marks have been widely offered for sale and sold throughout the U.S. in cigar stores and via the Internet.  Fuente's cigars bearing the X Marks have been and are sold to cigar smokers throughout the U.S.

24.    Substantial amounts of money have been spent advertising and promoting FUENTE FUENTE OPUSX cigars and smokers' articles sold in association with the X Marks in the United States.  Between 2014 and 2021, Fuente spent over ███████ advertising and promoting FUENTE FUENTE OPUSX cigars.

25.    FUENTE FUENTE OPUS X cigars have been widely advertised and promoted in the United States in many forms of media including DVDs, documentary films, all forms of printed publications, and the Internet on behalf of Fuente and by many others through unsolicited media coverage.

26.     Fuente advertises and promotes FUENTE FUENTE OPUSX cigars and other products bearing its X Marks, including smokers' articles and luxury goods, on Fuente worldwide webpages, including https://arturofuente.com/, https://www.fuenteagedselection.com/, and https://arturofuente-store.com/.   True and correct copies of Fuente websites used by Fuente to advertise and promote products in association with the X Marks are collectively attached as **Exhibit G**.

27.     Fuente also advertises and promotes FUENTE FUENTE OPUSX cigars and other products bearing its X Marks, including smokers' articles and luxury goods, on Fuente social media pages, including Instagram (over 96,000 followers), Twitter (over 8,000 followers), Facebook (over 17,000 followers), and YouTube (over 900 subscribers).  True and correct copies of Fuente's social media pages are collectively attached as **Exhibit H**.

28.     FUENTE FUENTE OPUSX cigars and other products bearing the X Marks, including smokers' articles and luxury goods, have been advertised and promoted in many trade publications, including *Cigar Aficionado* magazine, *Tobacconist* magazine, *Cigar Snob* magazine, *Cigar Smoker* magazine, *Cigar Lovers* magazine, *Cigars & Leisure* magazine, *CigarsLover Magazine*, *Cigar City* magazine, *Cigar & Cocktail* magazine, *Cigar Society* magazine, *Wine Spectator* magazine, *Whiskey Advocate* magazine, *New York Smoker* magazine, and *Cigar & Spirits* magazine, as well as in well-known, general publications, including *Robb Report*, *Selecta, Business Traveler, American Way, Hemisphere*, and others. True and correct copies of relevant portions of printed publications showing advertisements or promotions of FUENTE FUENTE OPUSX cigars or other products bearing the X Marks are collectively attached as **Exhibit I**.

29.     FUENTE FUENTE OPUSX cigars and other products bearing the X Marks have been the subject of unsolicited media coverage, including for example, features by *Forbes,*

*Esquire*, *The Wall Street Journal*, *Maxim*, *Black Enterprise*, *Robb Report*, *Two Mundos*, *The Martha's Vineyard Times*, *The Los Angeles Times*, *Luxury Las Vegas Gift Guide*, *SLY*, *Tampa Tribune*, *Sarasota*, *Financial Times*, *Cigar Aficionado*, *Tobacconist*, *Halfwheel*, *Cigar Snob*, *Cigars & Spirits*, *SmokeShop*, *Caesars Player*, *Florida Smoker*, *New York Smoker*, *Smoke*, *CigarsLover Magazine*, *Cigar Press*, *South Florida Opulence Magazine*, *Cigar Coop*, *Holt's Cigar Company*, *Atlantic Cigar Company,* and others. True and correct copies of exemplary webpages or relevant portions of printed publications with articles featuring FUENTE FUENTE OPUSX cigars or other products bearing the X Marks are collectively attached as **Exhibit J**.

30.　Fuente advertises and promotes FUENTE FUENTE OPUSX cigars and other products bearing its X Marks, including smokers' articles and luxury goods, at industry-wide tradeshows.  For example, Fuente has been an exhibitor at Cigar Aficionado's Big Smoke events, Premium Cigars Association Convention & International Tradeshow, and Cigar Heritage Festival.  These events are held annually and attract thousands of cigar aficionados and consumers.  In addition, because FUENTE FUENTE OPUSX cigars are so famous and in such high demand, they are the subject of numerous charity events and auctions across the United States.

31.　Fuente's X Marks are featured in documentaries released by Fuente; television shows, including Blue Bloods and Criminal Minds; and movies, including Shade (2003), Step Up Revolution (2012), and Father of the Bride (2022).

32.　Fuente and its cigars have become so famous and well-known that they have been the subject of, and the answer to, both a New York Times Sunday crossword puzzle clue and a Jeopardy television game show question.

33.　By reason of the advertisement and promotion, unsolicited media coverage, customer word-of-mouth, and sales of the FUENTE FUENTE OPUSX cigars and other products

bearing the X Marks, including smokers' articles and luxury goods, Fuente has established tremendous goodwill, fame, and selling power in its X Marks.  The purchasing public and the cigar industry recognize that the common characteristic "X" is indicative of the origin of Fuente's cigars and identify the letter "X" exclusively with Fuente and its high-quality cigars and related products. Thus, the purchasing public and the cigar industry rely upon the X Marks to identify Fuente and Fuente's products and to distinguish Fuente and Fuente's products from others.  This reputation was built long before GCC's wrongful acts described herein.

**GCC'S WRONGFUL ACTS**

34.     GCC markets, offers for sale, and sells cigars in association with various marks including CX2, MX2, MX3, LX2, and BX3.

35.     Fuente does not object to GCC's use of marks that include the pattern of a "letter-x-number" as composite marks used with the CAO brand, such as its use of CX2, MX2, MX3, and LX2 as shown below in Paragraph 36, but GCC's marks have not previously used the "X" alone as a mark nor prominently featured the "X" portion of the marks separate from the other parts of the marks.

36.     For example, GCC's use of its prior "letter-x-number" composite marks, such as CX2, MX2, MX3, and LX2, have all been in association with prominent use of the housemark CAO.  Indeed, as shown in GCC's Complaint, its uses of these prior marks all include a CAO mark that is substantially larger than the "letter-x-number" composite marks and do not feature a stand-alone "X" mark.









37.     GCC has been aware of Fuente's position as to GCC's uses of the "letter-x-number" composite marks since at least the time it merged with CAO International, Inc., the prior user and owner of the MX2, CX2, and LX2 marks.

38.     In 2008, when Fuente learned of CAO International, Inc.'s intent to use U.S. Application Serial No. 77/394,730 for the LX2 mark, Fuente wrote to CAO International, Inc. to put it on notice of Fuente's X Marks and ensure that CAO International, Inc. would use this proposed new mark in a manner that would not infringe Fuente's family of X Marks.  The May 23, 2008, letter from counsel for Fuente to CAO International, Inc. and its counsel is attached as **Exhibit K**.

39.     In response to Fuente's 2008 letter, CAO International, Inc. confirmed that "its use of the mark LX2 will be consistent with its use of the marks MX2 and CX2" as shown above in Paragraph 36 and attached to Fuente's letter.  A copy of CAO International, Inc.'s June 2, 2008, letter is attached as **Exhibit L**.

40.     In its letter, CAO International, Inc. also acknowledged Fuente's family of X Marks, stating that it agreed "with Fuente's position, as stated in the letter, that CAO's use of the marks MX2 and CX2 does not infringe the family of X trademarks owned by Fuente."

41.     For the first time in July 2022, commensurate with the launch of its BX3 cigars, GCC began using a prominent, stand-alone "X" mark on its cigars and cigar boxes, and in its advertising and promotion of its BX3 cigars.







42.     The large "X" on GCC's BX3 cigar is at the center of its cigar band with the mark BX3 below it in a smaller size.



43.     The large "X" on GCC's BX3 cigar box is at the center of the box and is larger than any other print or mark on the box, with the mark BX3 below the large "X".



44.     Although GCC alleges in its Complaint that its use of X means "times," GCC has

used and/or uses a large "X" standing alone and the slogans "X marks the spot" and "Our upcoming

release has that special X factor" to advertise its BX3 cigars.





45.     The "X" on GCC's BX3 cigar bands and cigar boxes and in GCC's advertisements of the BX3 brand is substantially similar to Fuente's X Marks.

46.     GCC is willfully and deliberately infringing Fuente's X Marks by adopting and using an X mark that is confusingly similar to Fuente's X Marks.

47.     GCC has, by its own admission, been operating since the early 1900s and knows the industry reputation of Fuente and is familiar with Fuente's X Marks and the X Marks' industry reputation.

48.     GCC's use evokes Fuente's brand without authorization, confuses consumers, and diverts sales unfairly profiting off the substantial goodwill Fuente invested in its X Marks.

49.     At no time did Fuente authorize GCC to use its X Marks and at no time did GCC request from Fuente a license to use the X Marks.

50.     GCC's use of the "X" mark is likely to cause confusion among consumers and damage Fuente.

51.     Fuente attempted to resolve this matter with GCC without litigation, but GCC refused to do so and instead filed the Complaint seeking a declaratory judgment against Fuente.

52.     As soon as Fuente learned of GCC's planned July 2022 launch of its infringing BX3 cigars and use of an "X" mark in association with cigars, Fuente sent GCC a cease-and-desist

letter explaining Fuente's rights and requesting that GCC respect Fuente's X Marks and cease infringement thereof.  A copy of the July 5, 2022, cease and desist correspondence to GCC is attached as **Exhibit M**.

53.    In response to Fuente's letter, on July 7, 2022, GCC requested additional time to clear conflicts and acknowledged the time sensitive nature of the matter.  Fuente replied on July 8, 2022, reiterating the claims in the July 5, 2022, letter and inviting a phone call on the issues.  A copy of the July 7 and July 8, 2022, email correspondence is attached as **Exhibit N**.

54.    Rather than attempting to resolve this matter with Fuente as requested, GCC filed the Complaint the next business day, on July 11, seeking a declaration that its use of the "X" mark does not infringe Fuente's X Marks.

<u>**INJURY TO FUENTE AND THE PUBLIC**</u>

55.    GCC's unauthorized uses of the "X" mark in connection with the offering, distribution, and advertising of cigars, namely the BX3 cigars, are likely to cause confusion, mistake, and deception as to the source or origin of GCC's products, and likely to falsely suggest a sponsorship, connection, or association between GCC, its products, and/or its commercial activities with Fuente, its X Marks, and/or its commercial activities.

56.    GCC's unauthorized uses of the "X" mark, as described above, are likely to dilute the distinctiveness and value of Fuente's famous X Marks.

57.    GCC's unauthorized uses of the "X" mark, as described above, have damaged and irreparably injured Fuente, and if permitted to continue, will further damage and irreparably injure Fuente, its reputation and goodwill, the X Marks, and the public's interest in being free from confusion.

58.     GCC was and is aware of Fuente's rights and chose to disregard them by continuing its infringing activities over Fuente's objections.  As a result, GCC has acted knowingly, willfully, in reckless disregard of Fuente's prior rights, and in bad faith.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement Under**
**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

59.     Fuente repeats and realleges each allegation set forth in paragraphs 1 through 58 of these counterclaims.

60.     Without Fuente's consent, GCC used and continues to use in commerce reproductions, copies, and colorable imitations of Fuente's federally registered X Marks in connection with the offering, distribution, and advertising of cigars, namely GCC's CAO BX3 cigars, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

61.     GCC was aware of Fuente and its use and registration of its X Marks prior to adopting and using GCC's "X" mark in association with its BX3 cigars.

62.     GCC adopted and is using an "X" mark with its BX3 cigars knowing that such use would infringe and continues to infringe Fuente's X Marks.

63.     GCC adopted and is using an "X" mark with its BX3 cigars with the intent to trade on the goodwill associated with Fuente's X Marks.

64.     GCC has and continues to willfully infringe Fuente's X Marks.

65.     GCC is directly liable to Fuente for such infringement.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement, False Designation**
**of Origin, Passing Off, and Unfair Competition**
**Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

66.     Fuente repeats and realleges each allegation set forth in paragraphs 1 through 65 of these counterclaims.

67.     GCC's unauthorized uses of Fuente's X Marks, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of GCC, its products, and/or its commercial activities by or with Fuente, and thus constitute trademark infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**THIRD CLAIM FOR RELIEF**
**Trademark Dilution Under**
**Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

68.     Fuente repeats and realleges each allegation set forth in paragraphs 1 through 67 of these counterclaims.

69.     Fuente's X Marks are famous, as that term is used in 15 U.S.C. § 1125(c), and was famous before GCC's first use of the "X" mark in connection with the CAO BX3 cigars, based on, among other things, the inherent distinctiveness and federal registrations of Fuente's X Marks and the extensive nationwide use, advertising, promotion, and recognition of Fuente's X Marks.

70.     GCC's actions, as described above, are likely to dilute the distinctive quality of Fuente's famous X Marks by blurring in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

## FOURTH CLAIM FOR RELIEF
## Trademark Infringement Under
## <u>Virginia Code § 59.1-92.12</u>

71.     Fuente repeats and realleges each allegation set forth in paragraphs 1 through 70 of these counterclaims.

72.     Without Fuente's consent, GCC used and continues to use reproductions, copies, and colorable imitations of Fuente's registered X Marks in connection with the sale, offering for sale, distribution, and advertising of cigars, namely GCC's CAO BX3 cigars, in a manner likely to cause consumer confusion, mistake, or deception as to the source or origin of GCC or its products and thus constitutes trademark infringement under the Virginia Trademark and Service Mark Act, Va. Code Ann. § 59.1-92.12, *et seq*.

73.     GCC has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## FIFTH CLAIM FOR RELIEF
## <u>Common Law Trademark Infringement and Unfair Competition</u>

74.     Fuente repeats and realleges each allegation set forth in paragraphs 1 through 73 of these counterclaims.

75.     GCC's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as the origin, sponsorship, or approval of GCC, its products, and/or its commercial activities by or with Fuente such that GCC's acts constitute infringement of Fuente's proprietary rights in its X Marks, misappropriation of Fuente's goodwill in those marks, and unfair competition under Virginia common law.

76.     GCC is directly liable to Fuente for such infringement and unfair competition.

## JURY DEMAND

77.     Pursuant to Fed. R. Civ. P. 38, Fuente respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Fuente requests that this Court enter judgment in its favor on each claim for relief set forth above and award Fuente relief including, but not limited to the following:

A.     An order declaring that GCC's use of the "X" mark in association with its BX3 cigars infringes and dilutes Fuente's X Marks and constitutes trademark infringement and unfair competition under federal and/or Virginia state law.

B.     An order declaring that GCC's use of the "X" mark in association with its BX3 cigars is willful infringement and willful dilution of Fuente's rights in and to its X Marks.

C.     A permanent injunction enjoining GCC and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them from:

1.     using, registering, or seeking to register the "X" mark complained of herein, Fuente X Marks, and/or any other names or trademarks that are confusingly similar or likely to dilute Fuente's X Marks;

2.     representing that any products or services offered by GCC, or any activities undertaken by GCC, are associated, or connected in any way with Fuente or sponsored or authorized by or affiliated with Fuente; and

3.     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (C)(1)-(2).

D.      An order directing GCC to, within thirty (30) days after the entry of any injunction against it, file with this Court and serve on Fuente's attorneys a report in writing and under oath setting forth in detail the manner and form in which GCC has complied with the injunction.

E.      An order requiring GCC to account for and pay to Fuente all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws.

F.      An order requiring GCC to pay Fuente damages in an amount yet undetermined caused by the foregoing acts and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws.

G.      An order requiring GCC to pay Fuente its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

H.      An order requiring GCC to pay Fuente punitive damages for trademark infringement and unfair competition under Virginia common law.

I.      All other relief as the Court may deem appropriate.


Dated:  October 18, 2022                  Respectfully submitted,

                                          /s/ Anna B. Naydonov
                                          Anna B. Naydonov (Bar No. 80101)
                                          **FINNEGAN, HENDERSON, FARABOW,**
                                          **GARRETT & DUNNER, LLP**
                                          901 New York Avenue NW
                                          Washington, DC 20001
                                          Telephone: (202) 408-4000
                                          Facsimile: (202) 408-4400
                                          anna.naydonov@finnegan.com

                                          Virginia L. Carron (*pro hac vice* application
                                          forthcoming)
                                          R. Gordon Wright (*pro hac vice* application
                                          forthcoming)
                                          **FINNEGAN, HENDERSON, FARABOW,**

**GARRETT & DUNNER, LLP**
271 17th Street, NW, Suite 1400
Atlanta, Georgia 30363
Telephone: (404) 653-6400
Facsimile: (404) 653-6444
virginia.carron@finnegan.com
gordon.wright@finnegan.com

*Counsel for Defendant Fuente Marketing Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF")

to the counsel of record who have appeared in this case on behalf of the parties, and unredacted

copies have been served upon all attorneys of record via e-mail.


/s/ Anna B. Naydonov
Anna B. Naydonov (Va. Bar No. 80101)
Finnegan, Henderson, Farabow,
 Garrett & Dunner, LLP
901 New York Avenue NW
Washington, DC 20001-4413
Telephone: 202-408-4448
Fax: 202-408-4400
anna.naydonov@finnegan.com